**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DEREK WEIDE, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:25-cv-03566-EA |
| CITY OF CUMBERLAND | |
| Defendant. | |

**DEFENDANT CITY OF CUMBERLAND'S REPLY MEMORANDUM IN SUPPORT OF
ITS MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT**

Defendant, the City of Cumberland, through counsel, hereby submits its Reply
Memorandum of Law in Support of its Motion to Dismiss or in the Alternative for Summary
Judgment as to the claims of Plaintiff Derek Weide (ECF 15).

## I.    INTRODUCTION

Weide's Opposition to the City's Motion fails to cure the defects in his Complaint. In
particular, Weide has failed to allege facts sufficient to establish that he was subject to severe and
pervasive discriminatory conduct and therefore cannot claim a hostile work environment based
upon sexual harassment. He has also failed to allege facts which would establish that he was
subjected to the alleged conduct because of his sex.

In addition, the City is entitled to summary judgment on Weide's retaliation claim. Even
when construed in a light most favorable to Weide, the undisputed facts establish that the City had
legitimate, nonretaliatory reasons for the actions it took. Weide has proffered no evidence to show
that the City's proffered reasons are false or a pretext for discrimination.

At its core, Weide's Complaint alleges a handful of mildly off-color comments by his
supervisor, Jeffrie Harden. When Weide complained, Harden's conduct was investigated, and he

was disciplined consistent with the City's disciplinary guidelines.   More importantly, the inappropriate conduct stopped as a direct result of Weide's complaint.

Likewise, the "retaliation" Weide alleges was in reality appropriate supervision and oversight of his work; assignments which were well within his job description; and entirely appropriate, by-the-book handling of his FMLA application.   His claims of harassment by co-workers are without substance, and he does not even allege than any such "harassment" occurred at the direction of the City.   Finally, while he claims that a negative performance review was part of the City's alleged retaliation, he has made no effort to dispute the City's evidence that he refused to complete at least one job assignment, that he called out to avoid another one, and that City administration had received reports of him slacking off on the job.

## II.   ARGUMENT

### A.  Weide has Failed to Allege Severe or Pervasive Conduct to Support his Claim of a Hostile Work Environment Based on Sexual Harassment

In order for a hostile work environment claim to be actionable, a plaintiff must allege offensive conduct which is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems,* 510 U.S. 17, 21 (1993), quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986).   Although this is necessarily a fact-specific inquiry, it does not follow – as Weide suggests – that the determination of whether a specific set of incidents amounts to severe or pervasive conditions must be reserved for the trier of fact.   To the contrary, Fourth Circuit case law is replete with opinions affirming dismissals and summary judgments entered on a district court's finding that the conduct at issue was not severe or pervasive as a matter of law.   See, e.g., *Bonds v. Leavitt,* 629 F.3d 369, 385 (4th Cir. 2011) (Plaintiff failed to plead conditions sufficient to state a claim that the offensive conduct was severe or pervasive).   See also, *Robinson v. Priority Automotive*

*Huntersville, Inc.,* 70 F.4th 776, 783 (4th Cir. 2023), *McIver v. Bridgestone Americas, Inc.,* 42 F.4th 398 (4th Cir. 2022), and *Pryor v. United Airlines, Inc.,* 791 F.3d 488 (4th Cir. 2015).

"Title VII is violated when the workplace is permeated with discriminatory [sex-based] intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ocheltree v. Scollon Products,* 335 F.3d 325, 331 (4th Cir, 2003), quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. at 21 (internal quotations omitted). The severe or pervasive requirement exists to filter out complaints of ordinary workplace tribulations, including abusive language and vulgar jokes, *id* at 333, quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (internal quotations omitted) (internal citations omitted), even jokes "tinged with sexual innuendo." *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir. 1995). In many cases, the line between conduct which is "merely vulgar and mildly offensive" and that which is "deeply offensive and sexually harassing" is uncertain, and drawing it requires a weighing of the facts and the credibility of witnesses. *Id* at 430-31, citing *Carr v. Allison Gas Turbine Division,* 32 F.3d 1007, 1009-10 (7th Cir. 1994). In others, the conduct is not within the area of uncertainty, and the court may draw the line based upon the allegations in the pleadings or the facts in the record.

In this case, Harden's conduct comes nowhere near the area of uncertainty. In his Opposition, Weide points to "four separate incidents in nine days." (ECF 15 at p. 20.) One of these, Harden's inquiry whether Weide had been "thinking about" him over the weekend (ECF 15 at p. 17, Compl. at ¶ 20) lacks any sexual or demeaning content whatsoever. The other incidents, 1) Harden telling Weide about a dream in which Weide tried to kiss him (ECF 15 at p. 17); 2) Harden relating a second dream about Weide in which Harden "forgot his safeword" (*id*.), and 3) Harden drawing a picture of what allegedly looked like a penis (*id*), cannot

3

reasonably be construed as anything other than sophomoric, vulgar attempts at humor. This is not the type of conduct which Title VII exists to prevent.

Weide has not claimed the need for discovery on the issue of whether Harden's conduct was severe or pervasive. This issue is therefore ripe for determination under FRCP 12(b)(6) based on the pleadings alone. Weide's allegations, taken as true, are insufficient to establish this essential element of a sexual harassment claim, and the claim must be dismissed.

### B. Weide has Failed to Allege Facts Sufficient to Establish that Harden's Comments and Conduct were Because of Weide's Sex

In addition to being severe or pervasive, conduct forming the basis of a hostile work environment claim must be based on the sex of the plaintiff. See *Oncale v. Sundowner Offshore Svcs.,* 523 U.S. 75, 80 (1998). To establish this element of the claim, the plaintiff must allege and prove not just that the conduct had sexual connotations, but also that it "actually constituted *discrimination*…because of…sex." *Id* at 81 (emphasis in original) (internal quotations omitted).

In his Opposition, Weide correctly asserts that discrimination "because of sex" need not involve sexual desire, ECF 15 at p. 18, nor is it limited to conduct directed by men at women. *Oncale,* 523 U.S. at 79-80. But he ignores the requirement that the behavior must be so "objectively offensive as to alter the conditions of the victim's employment." *Id,* at 81. He also fails to point to any actual facts alleged in his Complaint which, assuming them to be true, would establish that Harden's treatment of him was discriminatory on the basis of sex.

In *Oncale,* the Supreme Court identified three ways for a plaintiff to show same-sex harassment based on sex: 1) credible evidence that the harasser is homosexual; 2) "when the sex-specific and derogatory terms of the harassment indicate general hostility to the presence of the victim's sex in the workplace;" or 3) facts which show that the harasser treated members of one sex worse than members of the other sex in a mixed sex workplace. *Roberts v. Glenn*

4

*Industrial Group, Inc.,* 998 F.3d 111, 118 (4th Cir. 2021), quoting *Oncale,* 523 U.S. at 80-81 (internal quotations omitted).  In his Opposition, Weide claims that Harden's alleged harassment "was explicitly sexual and sex-specific" (ECF 15 at p. 18, Compl. at ¶ 16-24), apparently invoking the second avenue of proof identified in *Oncale.*  He then points to his allegations that Harden's comments reduced Weide to a "sexual object for Harden's fantasy and amusement." (ECF 15 at p. 18, Compl. at ¶ 25), and that his conduct was "motivated by [their] sex and his perception of [them] as male employees he could sexually objectify."  *Id.*  These allegations, and the allegations in the Complaint generally, are insufficient to establish "general hostility to the presence of [Weide's] sex in the workplace."  *Roberts,* 998 F.3d at 118.

Weide argues, as he must, that in the context of a 12(b)(6) motion, the Court must accept these allegations as true.  (ECF 15 at pp. 18-19.)  To be sure, the Court must accept all *factual* allegations as true.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  What the Court is not required to do, though, is accept conclusory statements.  *Id.*  See also *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  The allegations at issue here draw conclusions about Harden's motivations without alleging any facts to support them (other than the assertion "upon information and belief" in Paragraph 24 of the Complaint that Harden did not engage in similar conduct towards female employees).  Weide goes on to allege, in a similar conclusory fashion, that the comments and conduct "created an environment that any reasonable person would find hostile and abusive."  (Compl. at ¶ 26.)  The Court is not required to accept these allegations, and should disregard them.

Weide makes almost no effort, other than his own say-so, to argue that his allegations about Harden's motivation are sufficient to establish gender-based hostility.  Instead, he defaults to mischaracterizing the City's position on the "because of sex" element of his case, asserting

5

that it is based upon the fact that Harden had no female subordinates or co-workers other than Cassell.  ECF 15 at p. 18.  The City did reference this fact as an aside (ECF 12 at p. 15), but did not rely on it in its argument.  Weide pleads no facts to suggest, let alone establish, that Harden's comments and actions were motivated by gender-based hostility.  No amount of discovery is going to change that.

### C.  Weide has Failed to Allege Facts Sufficient to Show that the City Unlawfully Retaliated Against Him

The anti-retaliation provision of Title VII exists to protect employees from employer conduct which is intended to restrain them from engaging in protected activities such as complaining about discrimination.  *Burlington Northern & Santa Fe Ry. v. White,* 548 U.S. 53, 66 (2006).  It does not protect from all retaliation, only that which produces an injury or harm. *Id* at 67.  More specifically, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have dissuaded a reasonable worked from making or supporting a charge of discrimination."  *Id.* at 68, quoting *Rochon v. Gonzales,* 438 F.3d 1211, 1219 (DC Cir. 2006) (internal quotations omitted) (internal citations omitted).  As is the case with Title VII generally, the purpose of the prohibition on retaliation is not to establish a "general civility code for the workplace," *id* at 68, quoting *Oncale,* 523 U.S. at 80, nor is it to protect workers from the "ordinary tribulations of the workplace."  *Id,* quoting *Faragher,* 524 U.S. at 788.

To establish his claim of retaliation in this case, Weide's Complaint describes a series of allegedly adverse actions[1]:  daily worksheet requirements (ECF 15 at p. 23); "constant

---

[1] Weide's Opposition to the Motion to Dismiss includes citations to the Complaint to support these claims; however, the paragraph numbers cited do not appear to line up with the Paragraph in the Complaint.

surveillance and photographing by Harden throughout the workday" (*id.*); "dangerous work assignments in extreme heat performing physically demanding tasks without adequate support" (*id*); "mandatory fitness-for-duty psychological examination never required in 17 years, stigmatizing Weide as mentally unfit (*id*); unpaid suspension pending examination results (*id*); and his first negative performance review in 17 years (*id*). None of these slights, standing alone, meet the material adversity standard articulated in *Burlington Northern.* Thus it appears that Weide is attempting to plead that he was subject to a retaliatory hostile work environment, like the plaintiff in *Laurent-Workman v. Wormuth,* 54 F.4th 201 (4th Cir. 2022). Such a claim has its own essential elements, similar to the elements of a discriminatory hostile work environment. And similar to Weide's claim for a discriminatory hostile work environment, his retaliation claim fails because he has failed to state a cause of action upon which relief can be granted.

A hostile work environment claim based on retaliation allows a plaintiff to establish the second element of retaliation, i.e. that the employer took adverse action against him, with allegations of a course of conduct, rather than just a single adverse action. See *Laurent-Workman,* 54 F.4th at 212. must allege that the retaliatory conduct 1) was unwelcome; 2) was sufficiently severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination; and 3) can be attributed to the employer. *Id* at 218 (internal citations omitted). And as is the case with his harassment claim, Weide fails to allege conduct on the part of the City which is severe or pervasive. To the contrary, his allegations depict a work environment with supervisors who actually supervise, an administration which appropriately responded to a doctor's note indicating that Weide was unable to safely operate vehicles, a handful of assignments which, though arguably unpleasant, are well within his job description, and an unfavorable performance evaluation which did not lead to a demotion or

7

reduction in pay.  Even assuming all of these allegations are true, none of the incidents alleged, alone or together, are severe or pervasive, nor did they alter the terms of Weide's employment.

### D.  Weide is Unable to Prove that the City Unlawfully Retaliated Against Him

Even if Weide's allegations of retaliation are sufficient to establish a *prima facie* case of retaliation, he has proffered insufficient evidence to overcome a motion for summary judgment. What's more, there is no amount of discovery which will enable him to do this.

1.      The *McDonnell-Douglas* burden-shifting analysis applies in the context of summary judgment.

In his Opposition, Weide correctly argues that the *McDonnell Douglas* analysis is not a pleading standard, and is therefore not properly applied in deciding a motion to dismiss under FRCP 12(b)(6). (ECF 15 at p. 7.)  The City has not argued otherwise.  *McDonnell-Douglas* does, however, apply in the context of a motion for summary judgment.  See, e.g. *Ames v. Ohio Dep't of Youth Svcs.,* 605 U.S. 303 (2025).

The *McDonnell-Douglas* framework requires first that the plaintiff make a *prima facie* showing that the defendant acted with discriminatory or retaliatory motive.  *Ames,* 605 U.S. at 307-08, citing *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 (1973).  If the plaintiff clears that hurdle, the burden then shifts to the employer to articulate some legitimate, nonretaliatory reason for its actions.  *Ames,* 605 U.S. at 309, *McDonnell-Douglas,* 411 U.S. at 802.  If the employer is able to articulate such a reason, the burden then shifts back to the plaintiff to show that the stated justification was a pretext for discrimination or retaliation.  *Ames,* 605 U.S. at 309, *McDonnell-Douglas,* 411 U.S. at 804.  Pretext in a retaliation case requires a plaintiff to show that an employer's proffered nonretaliatory reason for a particular action is not only false, but also that retaliation was the real reason for the action.  *Jiminez v. Mary Washington Coll.,* 57

8

4936-3770-1259, v. 1

F.3d at 377-78.  See also, *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993) and

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 146-47 (2000).

        2.      <u>Weide cannot make a prima facie case for unlawful retaliation.</u>

For the same reasons articulated in the City's argument in Section II.C. above that Weide

has failed to allege facts which would establish a claim of retaliation, Weide cannot establish a

*prima facie* case under the *McDonnell-Douglas* framework.  Even when viewed in a light most

favorable to him, Weide's proffer of facts at best shows a normal, well-run workplace where

supervisors supervise, and an employee whose doctor has certified that he is unable to do his job

is removed from service pending an evaluation by another doctor.

        3.      <u>The City has articulated legitimate, non-retaliatory reasons for its treatment of Weide.</u>

Even if Weide were able to make a *prima facie* case of retaliation, the City has articulated

legitimate, non-retaliatory reasons for its actions, and provided evidence to support its claims.

With regard to the "surveillance" and "increased scrutiny," the City has explained that the

administration had received reports of Weide and the other Flood Department employees

slacking off at work (ECF 12 at p. 2), and has shown that the increased supervision actually

began before Harden made the comments at issue.  (*Id* at p.3.)  It has also proffered affidavits

from the Flood Department supervisors evidencing the fact that their job duties required them to

ensure that the Technicians had everything they needed to complete assignments, and that they

were actually working.  (*Id* at p. 9.)  Regarding the allegedly dangerous work assignments, the

City has proffered evidence which not only disputes Weide's version of events, but also shows

that in some cases he did not actually do the work at all.  (ECF 12 at pp. 9-10.)

The City has also proffered substantial evidence to show that the fitness-for-duty

evaluations it required of Weide were based upon a legitimate safety concern.  Weide argues that

4936-3770-1259, v. 1

these evaluations were retaliatory because 1) he had never previously been required to undergo a similar evaluation despite 17 years on the job; and 2) he felt that the City was stigmatizing him as being mentally unfit. (ECF 15 at p. 23.)  In rebuttal, the City has proffered evidence that the examinations were prompted when Weide submitted an application for intermittent leave under FMLA in order to treat episodic anxiety. (ECF 12 at p. 7.)  The application was accompanied by a statement from a nurse practitioner certifying that Weide was unable to manage higher-level decisionmaking or operate vehicles when he was experiencing episodes of anxiety. (*Id.*)  As Ken Tressler, the City's Director of Administrative Services, attested in his Affidavit, the nurse practitioner's certification prompted concern that Weide would experience an episode while he was operating a City vehicle or in a situation which required quick thinking. (*Id.*)  This in turn caused the City to question whether Weide's condition prevented him from working at all. (*Id.*)  Further, the City has proffered evidence that, in sending Weide for the fitness-for-duty examinations, it followed its own policies *to the letter.* (*Id* at pp. 7-9.)

> 4.    <u>Even if afforded the opportunity to take discovery, Weide will be unable to show that the City's actions were a pretext for retaliation.</u>

Citing *Jiminez v. Mary Washington Coll.,* 57 F.3d 369, 378 (4th Cir. 1995) and *Holland v. Washington Homes, Inc.,* 487 F.3d 208, 214 (4th Cir. 2007), Weide has asserted categorically that retaliation claims cannot properly decided on summary judgment, or without discovery. (ECF 15 at p. 15.)  Neither *Jiminez* nor *Holland* support his assertion, and in fact in *Holland,* the Fourth Circuit actually affirmed the District Court's grant of summary judgment against the plaintiff. *Holland,* 487 F.3d at 210.  That being said, both cases are nonetheless instructive on the Fourth Circuit's standard for proving pretext.

Establishing pretext in a retaliation case requires a plaintiff to show that an employer's proffered nonretaliatory reason for a particular action is not only false, but also that retaliation

10

was the real reason for the action. *Jiminez,* 57 F.3d at 377-78. This is done primarily by showing that the employer's proffered explanation is unworthy of credence, coupled with the evidence used to establish the prima facie case. *Holland,* 487 F.3d at 214-15, citing *Reeves*, 530 U.S. at 142-43.

Weide claims that he needs the opportunity to take discovery to establish pretext, claiming that all of the facts bearing on the issue are within the exclusive control of the City. (ECF 15 at pp. 15-16.) He specifically cites the need to take discovery on whether other employees were required to submit daily worksheets, whether the psychological exam was routine or targeted, why he received a negative performance evaluation, why Harden was reinstated to his prior position, Harden's disciplinary history, why Weide was treated adversely after complaining, and whether the City's explanations are pretextual. (*Id.* See also, ECF 15-1 at pp. 4-6.) All of the discovery he claims to need goes directly to the City's intent in taking the actions it took.

In its Motion, the City proffers evidence to show not only that it had legitimate reasons for taking the actions Weide alleges, but also that Weide's allegations of retaliation are false in several material respects which are well within his own knowledge. Weide makes no effort in his Opposition to dispute those types of facts at all, let alone with a sworn affidavit. For example, he does not dispute the City's assertions that: the "snake-infested" brush actually only had one snake in it (ECF 12 at p. 10) and that when he saw the snake, he refused to complete the assignment (*id*); that he was provided PPE when he asked for it (*id*); and that he did not actually clean feces or dirty needles from the homeless camp because he called off on the day the work was actually done (*id*). Likewise, he does not dispute the City's characterization of the May 13, 2025 flood event, including the fact that the entire Department worked the same hours he did

11

(*id*), and that the City's Flood Protection Emergency Plan does not require pump stations to have two operators (*id*).  Neither does he dispute the City's proffer of the FMLA application containing his doctor's opinion that his anxiety prevented him from being able to safely operate a vehicle, or of the evidence that the City followed its own policy in referring him for the psychological fitness-for-duty examinations.

In short, Weide's claimed need is for discovery which would be probative of whether the City took these actions with retaliatory intent.  But this is only the second prong of the pretext analysis articulated in *Jiminez:*  Weide must also proffer evidence that the City's explanations for its actions are false.  Given Weide's failure to counter the City's proffer with competent evidence that is unquestionably within knowledge he already has, the City's intent behind its actions is of little help to him, and his claim of need is completely unavailing.  It doesn't matter whether the City intended to punish Weide for his complaint about Harden by giving him the work assignments he alleges in the complaint.  The City has proffered evidence to establish that the assignments were either not dangerous, or that he didn't do them, or both.  Likewise, it is irrelevant whether Weide is the first City employee ever required to undergo a psychological fitness for duty examination.  The City has proffered evidence that Weide's own doctor certified that he had a mental health condition which prevented him from performing essential functions of his job safely.  As for the negative performance review, it is hard to imagine that discovery will reveal retaliatory intent when Weide has all but admitted that he abandoned assignments and otherwise avoided work that he subjectively determined was dangerous.

At its core, Weide's retaliation claim is based upon a series of misrepresentations and half-truths which he has carefully crafted to give the appearance of materiality.  His failure to rebut the City's proffer with regard to these incidents with evidence of facts which are within

12

his own knowledge is fatal to the claim.  No amount of discovery into the City's intent will change that.

## III.     CONCLUSION

WHEREFORE, Defendant The City of Cumberland respectfully requests that the Court dismiss the Complaint of Plaintiff Derek Weide, or enter summary judgment in the City's favor.

**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.**

By: */s/ Megan T. Mantzavinos*
    Megan T. Mantzavinos
    Bar Number: 16416
    600 Baltimore Avenue, #305
    Towson, Maryland 21204
    (410) 339-6880
    (410) 339-6881 (Fax)
    *Attorney for Defendant City of Cumberland*

4936-3770-1259, v. 1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of January, 2026, a copy of the foregoing document was served upon all counsel of record via CM/ECF.

/s/ *Megan T. Mantzavinos*
Megan T. Mantzavinos

14

4936-3770-1259, v. 1