## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROBERT M. ILIFF, et al.,

    Plaintiffs,

        v.

CITY OF CUMBERLAND

    Defendant.

Civil Action No. EA-25-3566

## DEFENDANT CITY OF CUMBERLAND'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT TO THE CLAIMS OF PLAINTIFF ROBERT M. ILIFF

Defendant, the City of Cumberland, (hereafter, "City") by and through its counsel George B. Keahey, and Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., pursuant to the Rules of Civil Procedure, hereby files this its Reply Memorandum of Law in Support of its Motion to Dismiss or in the Alternative for Summary Judgment as to the claims of Plaintiff Robert M. Iliff [hereinafter "Iliff"] and, in support thereof, states as follows:

## INTRODUCTION

Plaintiff Iliff's Opposition to the City's Motion (ECF 15) fails to cure any of the defects in his Complaint. In particular, Iliff has failed to allege facts sufficient to establish that he was subject to severe and pervasive discriminatory conduct and therefore cannot claim a hostile work environment based upon sexual harassment. Iliff has also failed to allege any facts which would establish that he suffered an adverse employment action.

Additionally, the undisputed facts in the Complaint and the parties' Motion papers establish that the City is entitled to summary judgment on Plaintiff's sexual harassment claim because they fail to support the requirement that the conduct be "unwelcome."

The City is also entitled to summary judgment on his retaliation claim because the facts, even when construed in a light most favorable to Ilif, do not establish his retaliatory discharge claim.

At its core, Iliff's Complaint alleges a handful of mildly off-color comments by Harden that appear to be directed almost exclusively at Wiede.  When Weide complained, Harden's conduct was investigated, and he was disciplined consistent with the City's disciplinary guidelines. More importantly, it is uncontroverted that the inappropriate conduct stopped as a direct result of Weide's complaint.[1]

Likewise, the "retaliation" allegations that have been inappropriately grouped together as a joint claim by both Plaintiffs, were in reality appropriate supervision and oversight of his work; assignments which were well within his job description, albeit arguably unpleasant; and entirely appropriate, by-the-book handling of his FMLA application.  The additional claims of harassment by co-workers are without substance, and neither Plaintiff even allege than any such "harassment" occurred at the direction of the City's administration or any supervisory employees.[2]

Finally, Plaintiff's argument that the court cannot consider the exhibits attached to City's Motion to Dismiss has no basis under the law. It is well settled law that the court may consider an authentic document that a defendant attaches as an exhibit to a 12(b)(6) motion if plaintiff's claims arises and/or based on the facts in the document. *Pension Ben. Guar. Corp. v. White*

---

[1] Again, it should be noted that Iliff appears to have never even complained to the City of Harden's behavior.

[2] Again, the only specific allegation by Iliff is that the City was watching "them" while they work. A perfectly appropriate non-discriminatory supervision by the City.

*Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 279-80 (3d Cir. 2018). *And see*, "The court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Stahl v. U.S. Dep't of Agriculture*, 327 F.3d 697, 701 (8th Cir. 2003).

Taking all pleadings  in the light most favorable to Plaintiff Iliff, whether it is evaluated under the standard for a motion to dismiss under FRCP 12(b)(6) or FRCP 56, Iliff's claims of retaliatory discharge, or any kind of adverse employment action, are utterly meritless and must fail as matter of law.

## I.      ARGUMENT

### A.  Iliff has Failed to Allege Severe or Pervasive Conduct to Support his Claim of a Hostile Work Environment Based on Sexual Harassment.

In order for a hostile work environment claim to be actionable, a plaintiff must allege offensive conduct which is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems,* 510 U.S. 17, 21 (1993), quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986).  Although this is necessarily a fact-specific inquiry, it does not follow – as Iliff and Weide suggests – that the determination of whether a specific set of incidents amounts to severe or pervasive conditions must be reserved for the trier of fact.  To the contrary, Fourth Circuit case law is replete with opinions affirming dismissals and summary judgments entered on a district court's finding that the conduct at issue was not severe or pervasive as a matter of law.  See, e.g., *Bonds v. Leavitt,* 629 F.3d 369, 385 (4th Cir. 2011) (Plaintiff failed to plead conditions sufficient to state a claim that the offensive conduct was severe or pervasive).  See also, *Robinson v. Priority Automotive*

*Huntersville, Inc.,* 70 F.4th 776, 783 (4th Cir. 2023), *McIver v. Bridgestone Americas, Inc.,* 42 F.4th 398 (4th Cir. 2022), and *Pryor v. United Airlines, Inc.,* 791 F.3d 488 (4th Cir. 2015).

"Title VII is violated when the workplace is permeated with discriminatory [sex-based] intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ocheltree v. Scollon Products,* 335 F.3d 325, 331 (4th Cir, 2003), quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. at 21 (internal quotations omitted). The severe or pervasive requirement exists to filter out complaints of ordinary workplace tribulations, including abusive language and vulgar jokes, *id* at 333, quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (internal quotations omitted) (internal citations omitted), even jokes "tinged with sexual innuendo." *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir. 1995). In many cases, the line between conduct which is "merely vulgar and mildly offensive" and that which is "deeply offensive and sexually harassing" is uncertain, and drawing it requires a weighing of the facts and the credibility of witnesses. *Id* at 430-31, citing *Carr v. Allison Gas Turbine Division,* 32 F.3d 1007, 1009-10 (7th Cir. 1994). In others, the conduct is not within the area of uncertainty, and the court may draw the line based upon the allegations in the pleadings or the facts in the record.

In this case, Harden's conduct comes nowhere near the area of uncertainty. In his Opposition, Weide points to "four separate incidents in nine days." (ECF 15 at p. 20.) One of these, Harden's inquiry whether Weide had been "thinking about" him over the weekend (ECF 15 at p. 17, Compl. at ¶ 20) lacks any sexual or demeaning content whatsoever and clearly was not even directed at Iliff. The other incidents, 1) Harden telling Weide about a dream in which Weide tried to kiss him (ECF 15 at p. 17); 2) Harden relating a second dream about Weide in which Harden "forgot his safeword" (*id*.), and 3) Harden drawing a picture of what allegedly

looked like a penis (*id*), none of which are alleged to have been directed or targeted at Iliff and, although he may have been present, they cannot reasonably be construed as anything other than sophomoric, vulgar attempts at humor.  This is not the type of conduct which Title VII exists to prevent.

Iliff has not claimed the need for discovery on the issue of whether Harden's conduct was severe or pervasive.  This issue is therefore ripe for determination under FRCP 12(b)(6) based on the pleadings alone. Iliff's allegations, taken as true, are insufficient to establish this essential element of a sexual harassment claim, and the claim must be dismissed.

**B. Iliff has Failed to Allege Facts Sufficient to Establish that Harden's Comments and Conduct were Because of Iliff' sex.**

In addition to being severe or pervasive, conduct forming the basis of a hostile work environment claim *must* be based on the sex of the plaintiff. See *Oncale v. Sundowner Offshore Svcs.,* 523 U.S. 75, 80 (1998) (emphasis added). To establish this element of the claim, the plaintiff must allege and prove not just that the conduct had sexual connotations, but also that it "actually constituted *discrimination*…because of…sex." *Id* at 81 (emphasis in original) (internal quotations omitted).

In the Opposition, Plaintiffs correctly assert that discrimination "because of sex" need not involve sexual desire, ECF 15 at p. 18, nor is it limited to conduct directed by men at women. *Oncale,* 523 U.S. at 79-80. But he blatantly ignores the requirement that the behavior must be so "objectively offensive as to alter the conditions of the victim's employment." *Id,* at 81. In addition, none of the alleged comments were direct at Iliff, so how can they be offensive to him under the law? Arguendo, if merely being present when the comments were made to another can

4911-8557-6588, v. 1

somehow create a cause of action, which Defendant argues are cannot, Plainitff also fails to point to any actual facts alleged in his Complaint which, assuming them to be true, which would establish that Harden's comments to Weide were somehow discriminatory to Iliff on the basis of sex.

In *Oncale,* the Supreme Court identified three ways for a plaintiff to show same-sex harassment based on sex: 1) credible evidence that the harasser is homosexual; 2) "when the sex-specific and derogatory terms of the harassment indicate general hostility to the presence of the victim's sex in the workplace;" or 3) facts which show that the harasser treated members of one sex worse than members of the other sex in a mixed sex workplace. *Roberts v. Glenn Industrial Group, Inc.,* 998 F.3d 111, 118 (4th Cir. 2021), quoting *Oncale,* 523 U.S. at 80-81 (internal quotations omitted). In his Opposition, Weide claims that Harden's alleged harassment "was explicitly sexual and sex-specific" (ECF 15 at p. 18, Compl. at ¶ 16-24), apparently invoking the second avenue of proof identified in *Oncale.* He then points to his allegations that Harden's comments reduced Weide to a "sexual object for Harden's fantasy and amusement." (ECF 15 at p. 18, Compl. at ¶ 25), and that his conduct was "motivated by [their] sex and his perception of [them] as male employees he could sexually objectify." *Id.* Not only are these comments not directed toward Iliff and, therefore, "he was not a sexual object for Harden's fantasy and amusement," these allegations, and the allegations in the Complaint generally, are insufficient to establish the "general hostility to the presence of [Iliff's] sex in the workplace." *Roberts,* 998 F.3d at 118.

Plaintiffs, as they must, that in the context of a 12(b)(6) motion, the Court must accept these allegations as true. (ECF 15 at pp. 18-19.) To be sure, the Court must accept all *factual* allegations as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). What the Court is not required

to do, though, is accept conclusory statements. *Id.* See also *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The allegations at issue here draw conclusions about Harden's motivations without alleging any facts to support them (other than the assertion "upon information and belief" in Paragraph 24 of the Complaint that Harden did not engage in similar conduct towards female employees).  Plaintiffs go on to allege, in a similar conclusory fashion, that the comments and conduct "created an environment that any reasonable person would find hostile and abusive."  (Compl. at ¶ 26.)  The Court is not required to accept these broad fact-less allegations, and should disregard them.

Plaintiff's Iliff and Weide makes almost no effort, other than their own "say-so," to argue that the allegations about Harden's motivation are sufficient to establish gender-based hostility. Instead, they default to mischaracterizing the City's position on the "because of sex" element of the case, asserting that it is based upon the fact that Harden had no female subordinates or co-workers other than Cassell.  ECF 15 at p. 18.  The City did reference this fact as an aside (ECF 12 at p. 15), but did not rely on it in its argument.  Clearly, the absence of one sex or another on the job site is not indicative of hostility to that gender. Iliff and Weide plead no facts to suggest, let alone establish, that Harden's comments and actions were motivated by gender-based hostility.  No amount of discovery is going to change that.

### C. Iliff has Failed to Allege Facts Sufficient to Show that the City Unlawfully Retaliated Against Him.

The anti-retaliation provision of Title VII exists to protect employees from employer conduct which is intended to restrain them from engaging in protected activities such as complaining about discrimination.  *Burlington Northern & Santa Fe Ry. v. White,* 548 U.S. 53, 66 (2006).  It does not protect from all retaliation, only that which produces an injury or harm.

*Id* at 67.  More specifically, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have dissuaded a reasonable worked from making or supporting a charge of discrimination."  *Id.* at 68, quoting *Rochon v. Gonzales,* 438 F.3d 1211, 1219 (DC Cir. 2006) (internal quotations omitted) (internal citations omitted).  As is the case with Title VII generally, the purpose of the prohibition on retaliation is not to establish a "general civility code for the workplace," *id* at 68, quoting *Oncale,* 523 U.S. at 80, nor is it to protect workers from the "ordinary tribulations of the workplace."  *Id,* quoting *Faragher,* 524 U.S. at 788.

To establish his claim of retaliation in this case, Iliff's Complaint describes a series of allegedly adverse actions[3], only three of which appear to possibly apply to Iliff:  daily worksheet requirements (ECF 15 at p. 23); "constant surveillance and photographing by Harden throughout the workday" (*id.*); "dangerous work assignments in extreme heat performing physically demanding tasks without adequate support" (*id*); "None of these slights, standing alone, meet the material adversity standard articulated in *Burlington Northern.*  Thus, it appears that Iliff is attempting to plead that he was subject to a retaliatory hostile work environment, like the plaintiff in *Laurent-Workman v. Wormuth,* 54 F.4th 201 (4th Cir. 2022).  Such a claim has its own essential elements, similar to the elements of a discriminatory hostile work environment.  And similar to Iliff's claim for a discriminatory hostile work environment, his retaliation claim fails because he has failed to state a cause of action upon which relief can be granted.

A hostile work environment claim based on retaliation allows a plaintiff to establish the second element of retaliation, i.e. that the employer took adverse action against him, with allegations of a course of conduct, rather than just a single adverse action.  See *Laurent-*

---

[3] Iliff and Weide's Opposition to the Motion to Dismiss includes citations to the Complaint to support these claims; however, the paragraph numbers cited do not appear to line up with the Paragraphs in the Complaint.

*Workman,* 54 F.4th at 212. must allege that the retaliatory conduct 1) was unwelcome; 2) was sufficiently severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination; and 3) can be attributed to the employer. *Id* at 218 (internal citations omitted).  And as is the case with his harassment claim, Iliff fails to allege conduct on the part of the City which is severe or pervasive.  To the contrary, Iliff's allegations depict a work environment with supervisors who actually supervise, a handful of assignments which, though arguably unpleasant, are well within Iliff's job description, and a complete falsehood that he was forced to work in temperatures "in excess of 120 degrees." (Compl. at ¶ 63) (Iliff's Motion to Dismiss, Ex. 6). Even assuming all of these allegations are true, and one clearly is not, none of the incidents alleged, alone or together, are severe or pervasive, nor did they alter the terms of Iliff's employment.

### D.  Iliff is Unable to Prove that the City Unlawfully Retaliated Against Him.

Even if Iliff's allegations of retaliation are sufficient to establish a *prima facie* case of retaliation, he has proffered insufficient evidence to overcome a motion for summary judgment and there is no amount of discovery which will enable him to do this.

1. <u>The *McDonnell-Douglas* burden-shifting analysis applies in the context of summary judgment.</u>

In his Opposition, Iliff correctly argues that the *McDonnell Douglas* analysis is not a pleading standard, and is therefore not properly applied in deciding a motion to dismiss under FRCP 12(b)(6). (ECF 15 at p. 7.)  The City has not argued otherwise.  *McDonnell-Douglas* does, however, apply in the context of a motion for summary judgment.  See, e.g. *Ames v. Ohio Dep't of Youth Svcs.,* 605 U.S. 303 (2025).

The *McDonnell-Douglas* framework requires first that the plaintiff make a *prima facie* showing that the defendant acted with discriminatory or retaliatory motive. *Ames,* 605 U.S. at

307-08, citing *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 (1973).  If the plaintiff clears that hurdle, the burden then shifts to the employer to articulate some legitimate, nonretaliatory reason for its actions.  *Ames,* 605 U.S. at 309, *McDonnell-Douglas,* 411 U.S. at 802.  If the employer is able to articulate such a reason, the burden then shifts back to the plaintiff to show that the stated justification was a pretext for discrimination or retaliation.  *Ames,* 605 U.S. at 309, *McDonnell-Douglas,* 411 U.S. at 804.  Pretext in a retaliation case requires a plaintiff to show that an employer's proffered nonretaliatory reason for a particular action is not only false, but also that retaliation was the real reason for the action.  *Jiminez v. Mary Washington Coll.,* 57 F.3d at 377-78.  See also, *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993) and *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 146-47 (2000).

2.      Iliff cannot make a prima facie case for unlawful retaliation.

For the same reasons articulated in the City's argument in Section II.C. above that Iliff has failed to allege facts which would establish a claim of retaliation, Iliff cannot establish a *prima facie* case under the *McDonnell-Douglas* framework.  Even when viewed in a light most favorable to him, Iliff's proffer of facts, at best, shows a normal, well-run workplace where the City supervisors supervise their employees on a daily basis as is their duty to the their tax paying constituents.

3.      The City has articulated legitimate, non-retaliatory reasons for its treatment of Iliff.

Even if Iliff were able to make a *prima facie* case of retaliation, the City has articulated legitimate, non-retaliatory reasons for its actions, and provided evidence to support its claims. With regard to the "surveillance" and "increased scrutiny," the City has explained that the administration had received reports of Weide and the other Flood Department employees slacking off at work (ECF 12 at p. 2), and that the increased supervision actually began before

Harden made the comments at issue. (*Id* at p.3.) It has also proffered affidavits from the Flood Department supervisors evidencing the fact that their job duties required them to ensure that the Technicians had everything they needed to complete assignments, and that they were actually working. (*Id* at p. 9.) Regarding the allegedly dangerous work assignments, the City has proffered evidence which not only disputes Iliff and Weide's version of events , but also in some cases shows that they did not actually do the work at all. (ECF 12 at pp. 9-10.)

4.     Even if afforded the opportunity to take discovery, Weide will be unable to show that the City's actions were a pretext for retaliation.

Citing *Jiminez v. Mary Washington Coll.,* 57 F.3d 369, 378 (4th Cir. 1995) and *Holland v. Washington Homes, Inc.,* 487 F.3d 208, 214 (4th Cir. 2007), Iliff has asserted categorically that retaliation claims cannot properly decided on summary judgment, or without discovery. (ECF 15 at p. 15.) Neither *Jiminez* nor *Holland* support his assertion, and in fact in *Holland,* the Fourth Circuit actually affirmed the District Court's grant of summary judgment against the plaintiff. *Holland,* 487 F.3d at 210. Both cases are instructive, however, on the Fourth Circuit's standard for proving pretext.

Establishing pretext in a retaliation case requires a plaintiff to show that an employer's proffered nonretaliatory reason for a particular action is not only false, but also that retaliation was the real reason for the action. *Jiminez,* 57 F.3d at 377-78. This is done primarily by showing that the employer's proffered explanation is unworthy of credence, coupled with the evidence used to establish the prima facie case. *Holland,* 487 F.3d at 214-15, citing *Reeves*, 530 U.S. at 142-43.

Iliff claims that he needs the opportunity to conduct discovery to establish pretext, claiming that all of the facts bearing on the issue are within the exclusive control of the City. (ECF 15 at pp. 15-16.) The areas specially cited that apply to Iliff are the need to take discovery

on whether other employees were required to submit daily worksheets and why Harden was reinstated to his prior position. Harden's disciplinary history, why Iliff was treated adversely after Weide complained and whether the City's explanations are pretextual. (*Id.* See also, ECF 15-1 at pp. 4-6.)[4] All of the discovery Iliff claims to need goes directly to the City's intent in taking the actions it took.

In its Motion, the City proffers evidence to show not only that it had legitimate reasons for taking the actions Iliff alleges, but also that Iliff's allegations of retaliation are false in several material respects which are well within his own knowledge. Iliff makes no effort in his Opposition to dispute those types of facts at all, let alone with a sworn affidavit.

For example, again, although the Complaint alleges Iliff was exposed to snakes, all of the testimony indicates that Weide was the one who complained about the issue to the City and not Iliff, Plaintiffs do not dispute the City's assertions that: the "snake-infested" brush actually only had one snake in it (ECF 12 at p. 10) and that when Weide (not Iliff) saw the snake, he refused to complete the assignment (*id*). Likewise, Iliff does not dispute the City's characterization of the May 13, 2025 flood event, including the fact that the entire Department worked the same hours he did (*id*), and that the City's Flood Protection Emergency Plan does not require pump stations to have two operators (*id*).

In short, Iliff's claimed need is for discovery which would be probative of whether the City took these actions with retaliatory intent. However, this is only the second prong of the pretext analysis articulated in *Jiminez:* Iliff's must also proffer evidence that the City's explanations for its actions are false. Given Iliff's failure to counter the City's proffer with

---

[4] Again, despite Plaintiff's continuous desire to lump all allegations of both Plaintiffs together in one claim, there is no allegation that Iliff complained about anything leaving the unsupportable supposition that the City retaliated against Iliff because he witnessed Harden's alleged behavior.

competent evidence that is unquestionably within knowledge he already has, the City's intent behind its actions is of little help to him, and his claim of need is completely unavailing. It doesn't matter whether the City intended to punish Weide for his complaint about Harden by giving him the work assignments he alleges in the complaint for two reasons. First, Iliff did not make the complaint so in his particular case they are implying that Iliff somehow knew of Weide's complaint and was also punished because of working with Weide. Furthermore, the City has proffered evidence to establish that the assignments were either not dangerous, or that he didn't do them, or both.

5.      Iliff's claims that he was terminated early under his contract because of retaliation is not supported by the pleadings.

Iliff's claim that "he suffered adverse employment action: early termination six weeks before his contract end (Compl. ¶¶ 61-68)" was unquestionably an adverse action (ECF 12 at p.25. is not supported by the pleadings.

As clearly set forth in Iliff's Motion, Iliff was a temporary worker and never guaranteed to the end of October as he claims, his Employment Agreement specifically states that his work shall "commence April 29, 2024 and shall terminate *no later than* October 25, 2024. (Iliff's Motion to Dismiss, Ex. 2, para. 3). Furthermore, no temporary worker, like Iliff here, was guaranteed work through the end of October as he claims in his Complaint and Opposition. (See Ex. 1 at ¶ 7 and Ex. 4 at ¶ 7).

At its core, Iliff's thinly framed retaliation claim is based upon a series of misrepresentations and half-truths which have been carefully crafted to give the appearance of

materiality. Iliff's desire to have this Court "read into" his clear and unambiguous Employment Agreement a guarantee not present is directly contradictory to the legal standard of review here.

Finally, Iliff's failure to rebut the City's proffers and direct weather evidence, with regard to the above incidents, with evidence of facts which are within his own knowledge is fatal to the claim. No amount of discovery into the City's intent will change that.

## II.    CONCLUSION

WHEREFORE, Defendant, City of Cumberland respectfully requests that the Court dismiss the Complaint of Plaintiff Robert Iliff or enter summary judgment as to him in the City's favor.

Respectfully submitted,

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

*/s/ Megan T. Mantzavinos*_____
Megan T. Mantzavinos, Esquire (Bar ID #16416)
mmantzavinos@moodklaw.com
George B. Keahey, Esquire (Bar ID #31672)
gkeahey@moodklaw.com
600 Baltimore Avenue, Suite 305
Towson, Maryland 21204
(410) 339-6880
Counsel for Defendant, City of Cumberland

4911-8557-6588, v. 1

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of February, 2026, a copy of the foregoing

document was served upon all counsel of record via CM/ECF.


/s/ Megan T. Mantzavinos
Megan T. Mantzavinos, Esquire