

April 9, 2026

Chambers of Stephanie A. Gallagher
United States District Judge

101 West Lombar Street
Baltimore, Maryland 21201
 21201
*(410) 962-7780*
*Fax (410) 962-1812*
*MDD_SAGchambers@mdd.uscourts.gov*

**Weide, et al v. City of Cumberland**
**Civil Case No. SAG-25-03566**

Dear Judge Gallagher:

I write in response to the Court's March 30, 2026, Letter Order directing me to explain the methods used to compile the quotations and citations in Plaintiffs' Opposition to Defendant's Motion to Dismiss. I take responsibility for the citation errors identified by the Court and provide the following explanation.

**Nature of the Errors**

At the outset, I want to make clear that all four cases cited in the Opposition, and all the other cases cited, are real cases that I personally pulled from Westlaw

QUINN PATTON

*An Employment Law Firm*

838 Ritchie Highway, Suite 4, Severna Park, Maryland 21146
1629 K Street N.W. Suite 300, Washington D.C. 20006
443.247.5444 | 202.508.3664



and reviewed. None of the cases themselves are fabricated or AI-generated. The errors relate to how the cases are quoted and characterized within the brief.

Three of the four cases. *Burlington Industries, Inc. v. Ellerth*, *Oncale v. Sundowner Offshore Services, Inc.*, and *Barrett v. Applied Radiant Energy Corp.*— do support the underlying legal propositions for which they are cited. However, upon using AI to improve the language (not of cases but of the argument) the AI system fabricated or modified the specific quotation language attributed to these cases, creating false quotations that were never intended by me as the drafter. The fourth case, *Ocheltree v. Scollon Productions, Inc.*, resulted from my own analysis of the case and while AI's modification / synthesis of the language made it unintelligible, I believe that the Court will find it was appropriate to use.

**Initial Research and Drafting Process**

The cases cited in the Opposition were pulled directly from Westlaw. I personally reviewed these cases and drafted the initial versions of the Opposition with citations reflecting the case holdings. A law clerk then cite-checked this initial draft against the Westlaw sources to verify accuracy.

**Use of AI to Revise the Prose of the Brief**

QUINN PATTON

*An Employment Law Firm*

838 Ritchie Highway, Suite 4, Severna Park, Maryland 21146
1629 K Street N.W. Suite 300, Washington D.C. 20006
443.247.5444 | 202.508.3664



After completing and cite-checking the initial draft, I used a closed artificial intelligence system[1] to assist with organizational outlining and to strengthen the prose. Like many lawyers today, we use AI to streamline editing, improve prose, and assist in evaluating how our arguments stand up to the logical tests of the cases produced. The use of AI by Plaintiff's attorneys can, and our case often does, reduce the hours billed to clients of limited means. As such, I provided the AI system with both the drafted brief and the case materials, requesting that it improve the rhetorical clarity and strength of the arguments. The system was also asked to compare the arguments with cases uploaded to ensure there were not logical fallacies. I did not request or intend for the AI system to modify any citations or quotations.

However, in the course of revising the text, the AI system nevertheless fabricated or modified quotations that I had not asked it to change. It did not add cases. After the AI revision, I reviewed the brief for content and argument flow but did not reverify each citation and quotation against the original Westlaw sources. Having personally pulled all the cases myself, and having had a law clerk verify them, and working within a closed system that cannot access or pull external cases,

---

[1] The closed system does not share information on the public domain and does not draw from it. Cases were uploaded as a verification and to test the strengths of the arguments made by the drafter.

QUINN PATTON

*An Employment Law Firm*

838 Ritchie Highway, Suite 4, Severna Park, Maryland 21146
1629 K Street N.W. Suite 300, Washington D.C. 20006
443.247.5444 | 202.508.3664



there seemed to be no logical reason to check the citations a third time. Now, because of this finding, I understand that such systems are inherently unreliable, at all stages and for all purposes, and must be checked again for adding quotations and using language that is not directly from the cases to strengthen arguments which was never my intent.

**The Specific Errors**

Upon receiving the Court's Letter Order, I pulled and reviewed each flagged case from Westlaw to understand the precise nature of the errors. Three of the four errors resulted from AI fabrication of quotations, while the fourth resulted from my own reading and application of a case during initial drafting. These are offered, not as argument or excuse for the errors, but to demonstrate the intent of the draft and to show the Court that the Plaintiff's case and the arguments did not need AI's augmentations to stand. The cases stand for themselves, and the Plaintiff's case should not be affected by an AI drafting error that resulted in this correspondence.

*Burlington Industries, Inc. v. Ellerth*. The brief quotes language stating that a supervisor may "sublimate his unlawful conduct in his supervision of the victim." This specific phrase does not appear in *Ellerth*. However, the underlying legal

QUINN PATTON

*An Employment Law Firm*

838 Ritchie Highway, Suite 4, Severna Park, Maryland 21146
1629 K Street N.W. Suite 300, Washington D.C. 20006
443.247.5444 | 202.508.3664



proposition, that supervisory harassment is particularly harmful because supervisors direct and control employees, is central to *Ellerth*'s analysis of vicarious liability for supervisor harassment. "On the one hand, a supervisor's power and authority invests his or her harassing conduct with a particular threatening character, and in this sense, a supervisor always is aided by the agency relation" *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763, (1998)and "[I]t is precisely because the supervisor is understood to be clothed with the employer's authority that he is able to impose unwelcome sexual conduct on subordinates" *Id.* quoting from *Meritor,* 477 U.S., at 77, 106 S.Ct., at 2410–2411 (Marshall, J., concurring in judgment). The original is far more persuasive in Plaintiff's favor than the misquote by AI which apparently attempted to summarize what *Ellerth* was saying.

*Oncale v. Sundowner Offshore Services, Inc.* The brief quotes language stating that determining harassment was "because of sex" "necessarily requires a factual determination." This specific phrase does not appear in *Oncale*. However, *Oncale* does hold that courts must engage in "careful consideration of the social context" and examine the "constellation of surrounding circumstances" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 at 82, to evaluate harassment claims, which necessarily involves factual determinations. *Oncale* goes further,

**QUINN PATTON**

*An Employment Law Firm*

838 Ritchie Highway, Suite 4, Severna Park, Maryland 21146
1629 K Street N.W. Suite 300, Washington D.C. 20006
443.247.5444 | 202.508.3664



requiring an inquiry into how the behavior is experienced by its target. See *Oncale*, 523 U.S. at 81. *Oncale* makes it clear that distinguishing between simple teasing and hostile or abusive behavior is something that juries and fact finders must determine using common sense and appropriate sensitivity to the social context. See *Oncale*, 523 U.S. at 82. Again, the AI took what it was given and summarized into a quotation that was neither accurate nor reflects the strength of the case materials.

*Barrett v. Applied Radiant Energy Corp*. The brief quotes language stating that "whether an employer's response was adequate is ordinarily a question of fact for the jury." This specific phrase does not appear in *Barrett*. Barrett however, makes it clear that an employee's response to a sexual harassment claim is a factual inquiry in that the only available defense to an employer is if they, the employer, can show that no adverse employment action was taken by the employer. See *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 265–66 (4th Cir. 2001). Additionally the employer may prevail if the employee failed to take advantage of preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *Barrett* 240. F.3d. at 266. The analysis of the adverse employment action, the preventative or corrective opportunities offered by the employer, and whether or not the employee took advantage of them are questions for a finder of

QUINN PATTON

An Employment Law Firm

838 Ritchie Highway, Suite 4, Severna Park, Maryland 21146
1629 K Street N.W. Suite 300, Washington D.C. 20006
443.247.5444 | 202.508.3664



fact or a jury. The summarizing of this fact into a quote was incorrect, the basis is actually stronger.

*Ocheltree v. Scollon Productions, Inc.* The use of this case was entirely my own analysis; however, it became an error by the AI revision process. The brief cites *Ocheltree* for the proposition that "At the pleading stage, courts should be careful not to dismiss a sexual harassment claim if there is any reasonable possibility that further investigation or discovery will reveal evidence to support the claim." This is incorrect.

First, the posture of *Ocheltree* makes it perhaps the wrong case to use here, where the Defendant is seeking a dismissal or a summary judgement prior to any discovery. What follows is simply an explanation as to why this case was selected, by me, to use here. *Ocheltree* came after a jury's deliberation on the facts about sexual harassment in the workplace. Specifically, Ocheltree finds that conduct in the workplace that made an individual uncomfortable because of their sex (in that case a woman) was sufficient for a jury to find rose to the level of discrimination because of sex. See *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 332 (4th Cir. 2003). In that case, there are circumstances very much analogous to this case – genitalia, pictures, and overtly sexual content (in the instant case describing of

**QUINN PATTON**

*An Employment Law Firm*

838 Ritchie Highway, Suite 4, Severna Park, Maryland 21146
1629 K Street N.W. Suite 300, Washington D.C. 20006
443.247.5444 | 202.508.3664



sexual dreams). There, as here, the defendant argued that the conduct was insufficient to be considered harassing to a reasonable person. See *Ocheltree*, 335 F.3d at 333. In *Ocheltree* a jury disagreed and we believe the same opportunity should be offered to a jury in this case. In *Ocheltree*, the Court found that the measures taken by the employer to prevent sexual harassment were simply not enough and that a reasonable jury could (and did) impute liability to the employer *Ocheltree*, 335 F.3d at 335. Again, we believe that this case should not be dismissed here but given that the Court in *Ocheltree* upheld a jury's decision, with similar circumstances, long after the motion to dismiss and summary judgement were concluded, appeared to this drafter to be strong evidence for why this matter should also proceed. That AI took my draft and created a paraphrase, disguised as a quote, is both deeply distressing to me as a drafter. It also weakened, not strengthened, the argument. Standing by itself, despite the posture, I still believe this case strongly supports denying the Defendant's motion.

**Additional Errors**

Upon further review of the brief beyond the four cases flagged by the Court, three additional citation errors were identified, which I disclose here in full.



*Mikels v. City of Durham, N.C.*, 183 F.3d 323 (4th Cir. 1999) (pages 22 and 26): The brief cites to *Mikels* for the proposition that the *Faragher/Ellerth* affirmative defense and states "ordinarily cannot be resolved on a Rule 12(b)(6) motion to dismiss." *Mikels* is a summary judgement case that found that there could be employer liability based on the way an employer responded to a complaint and the supervisory relationship on an agency by agency, case by case basis. See *Mikels*, 183 F.3d at 334. The citation was therefore directed at the wrong portion of Defendant's motion. *Mikels* was properly applicable to the summary judgment alternative and should have read cannot be ordinarily resolved on a Rule 56 motion.

*Roberts v. Glenn Industrial Group, Inc.*, (4th Cir. 2021): Upon re-reviewing *Roberts* against the brief, two quoted phrases attributed to it; "the employer's intent is almost always a question of fact" and that employment discrimination cases "are often dependent on circumstantial evidence" do not appear in *Roberts*. *Roberts* is a summary judgment case that affirmed that there are numerous ways for a plaintiff to prove sex same-sex sexual harassment including circumstantial evidence that the harassment was sexually motivated. See *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 118 (4th Cir. 2021). Evaluation of this

QUINN PATTON

*An Employment Law Firm*

838 Ritchie Highway, Suite 4, Severna Park, Maryland 21146
1629 K Street N.W. Suite 300, Washington D.C. 20006
443.247.5444  |  202.508.3664



evidence of employer intent is a question of fact that cannot be resolved at the 12(b)(6) or Rule 56 stage.

*Freeman v. Dal-Tile Corp.*, 750 F.3d 413 (4th Cir. 2014), and *EEOC v. Sunbelt Rentals, Inc.*: Two related errors appear. First, the language cited to *Freeman* at 421 "we must look at all the circumstances, including the frequency of the discriminatory conduct; its severity..." is actually a quotation cited within *Freeman* and properly attributed to *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306 (4th Cir. 2008); it is not *Freeman*'s own language. Second, the Table of Authorities and brief text identify the *Sunbelt* case as "*Sunbelt Rentals, Inc. v. Head & Engquist Equipment, L.L.C.*" which is an incorrect case name. The correct case at that citation is *EEOC v. Sunbelt Rentals, Inc.*

**The Affidavits**

The erroneous *Oncale* quotations also appear in both plaintiffs' Rule 56(d) declarations, which were similarly revised after receiving the Plaintiff's facts and then using the brief as a guiding point for the legal statements; legal points which, as already established were erroneous in that they were legally sound but not quotes from *Oncale*.

**QUINN PATTON**

*An Employment Law Firm*

838 Ritchie Highway, Suite 4, Severna Park, Maryland 21146
1629 K Street N.W. Suite 300, Washington D.C. 20006
443.247.5444 | 202.508.3664



**What Went Wrong**

With respect to the AI-related errors, I failed to appreciate that AI systems can fabricate quotations and alter legal characterizations even when tasked only with improving prose and argument structure, and even when provided with the actual case text. Having personally pulled all the cases myself and having had a law clerk verify them and working within a closed system that cannot access or pull external cases, there was no logical reason at the time to check the citations a third time. Now, because of this finding, I understand that such systems are inherently unreliable and must be checked for adding quotations and using language that is not directly from the cases to strengthen arguments, which was never my intent.

**Remedial Measures**

I have implemented the following protocols effective immediately:

**No AI revision of any legal document containing case citations.** Any AI assistance in brief preparation will be limited to organizational outlining only, occurring before any legal research or citation is incorporated. Citations and Case Law will be removed and then reinserted after any language changes have been made.

**QUINN PATTON**

*An Employment Law Firm*

838 Ritchie Highway, Suite 4, Severna Park, Maryland 21146
1629 K Street N.W. Suite 300, Washington D.C. 20006
443.247.5444 | 202.508.3664



**Mandatory post-revision cite-checking.** Any legal document that undergoes revision after initial cite-checking, by any means, will be reverified word-for-word against primary sources before filing.

**Enhanced verification for sworn documents.** All legal citations or characterizations in affidavits and declarations will be independently verified against primary sources before client execution.

**Office-wide protocols.** All attorneys and staff will be trained on these procedures and the specific risks associated with AI tools in legal drafting.

I have personally reviewed each flagged citation against the original Westlaw cases and understand the scope and nature of the errors.

I want to be candid with the Court about what this experience has been. As with many firms we have been experimenting with how best to use AI to shorten processes and provide services to clients in a more cost-effective way to improve access to justice. As a firm we were aware that AI can fabricate cases. We do not use AI systems that can search the web for cases and as such, I pulled these cases myself, I had them verified, and I filed a brief I believed was accurate. My use of *Ocheltree*, demonstrates that the brief was drafted with only the highest level of

QUINN PATTON

*An Employment Law Firm*

838 Ritchie Highway, Suite 4, Severna Park, Maryland 21146
1629 K Street N.W. Suite 300, Washington D.C. 20006
443.247.5444 | 202.508.3664



advocacy for my client in mind. To learn that a tool I used to strengthen the prose silently altered citations and fabricated quotations that were then identified by this Court is deeply humiliating and humbling. The purpose of the process I followed was specifically to prevent this kind of error. That it produced one instead, without my knowledge, is a sobering lesson about the limits of these tools that I will not forget.

I sincerely apologize to the Court for these errors and for the time required to address them. If the Court finds it appropriate, I am prepared to file a corrected version of the Opposition to Defendant's Motion to Dismiss with accurate citations and quotations, as well as corrected declarations for Plaintiffs. As demonstrated herein, the cases cited, along with the others, when taken properly and read for their propositions strongly support Plaintiff's position that these motions to dismiss or for summary judgement should fail. I am available to provide any additional information the Court requires.

Respectfully submitted

/s/ Donald Quinn
Donald G. Quinn, Fed. Bar No. 22324
donquinn@quinnpatton.com
*Attorney for Plaintiff*

## QUINN PATTON

*An Employment Law Firm*

838 Ritchie Highway, Suite 4, Severna Park, Maryland 21146
1629 K Street N.W. Suite 300, Washington D.C. 20006
443.247.5444 | 202.508.3664